UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DONALD W. ZAPPLEY, SR.,

    Plaintiff,

v.                                                                   Case No. 2:09-CV-198

THE STRIDE RITE CORPORATION,              HON. GORDON J. QUIST

    Defendant.
_____/

## **OPINION**

Plaintiff, Donald W. Zappley, Sr. ("Zappley"), proceeding *pro se*, filed this action against his former employer, The Stride Rite Corporation ("Stride Rite"), asserting claims arising out of the Stride Rite Corporation Retirement Income Plan (the "Plan"). On January 13, 2010, the Court entered an Opinion and an Order granting in part and denying in part Stride Rite's motion to dismiss. The Court granted the motion with regard Zappley's claim under ERISA § 510, concluding that it was barred by the statute of limitations, but denied the motion with regard to Zappley's claim for benefits under ERISA § 502(a)(1)(B) on the ground that a motion asserting failure to exhaust administrative remedies should be brought as a motion for summary judgment.

In accordance with the Court's prior ruling, Stride Rite has filed a motion for summary judgment seeking dismissal without prejudice of Zappley's remaining claim for benefits under the Plan on the ground that Zappley has failed to exhaust his administrative remedies. For the reasons set forth below, the Court will grant Stride Rite's motion and dismiss Zappley's complaint without prejudice.

BACKGROUND

In its January 13, 2010, Opinion, the Court set forth the following facts that were discernable from Zappley's complaint and various exhibits:

> The allegations in Zappley's 21-page complaint are rambling, disjointed, and difficult to follow. From what the Court can tell, it appears that Zappley was employed by Stride Rite from July 14, 1975, until February 21, 1987. During his employment with Stride Rite, Zappley was covered by the Stride Rite Retirement Income Plan (the "Plan"), which also included a disability component. On February 5, 1987, Zappley was injured when he was involved in a hit and run accident with a tractor trailer. The accident resulted in one or more legal proceedings in New Jersey.
> At the time of the accident, Zappley was working as the manager of Stride Rite's Herald Square store in New York City. Zappley had previously held the position of district manager, in which he was responsible for 10 to 13 stores in New Jersey, Delaware, Maryland, and Pennsylvania. Stride Rite assigned Zappley to the New York City store on December 19, 1986, after it became dissatisfied with his performance as district manager. Stride Rite terminated Zappley's employment on February 18, 1987. Zappley sued Stride Rite in February 1988 in New Jersey Superior Court. Stride Rite removed the case to the United States District Court for the District of New Jersey. On December 20, 1989, the New Jersey district court entered an order of dismissal with prejudice, noting that the parties had resolved the case.

(1/13/10 Op. at 1-2.)

The instant motion, supporting papers, and exhibits discloses the following additional relevant facts. Zappley and his former wife, Patricia A. Zappley (now known as Patricia Isabella), were divorced pursuant to a final judgment of divorce entered by the Superior Court of New Jersey, Gloucester County, on February 18, 1992. In April 2007, Collective Brands, Inc. ("Collective Brands") acquired the Plan as a part of its acquisition of Stride Rite. Initially, Stride Rite's Human Resources Department continued to administer the Plan, including handling participant inquires and claims for benefits. Eventually, Collective Brands' Human Resources Department began to assist with participant inquiries and claims from the Plan. (Kahle Aff. ¶¶6-7.)

In April 2009, Zappley contacted Christy Kahle, the Director of Benefit Strategy and Design for Collective Brands. Zappley mentioned his previous lawsuit against Stride Rite and inquired about his pension benefits. Kahle informed Zappley that because she was in Topeka, Kansas, she did not have any files on the matter. Zappley told Kahle that he would send her copies of the information he had. (*Id.* ¶ 8.) Subsequently, Zappley sent Kahle copies of the 1992 final judgment of divorce, some letters from his divorce attorneys, and two letters from Stride Rite regarding Zappley's benefits under the Plan. (*Id.* ¶ 9.) In subsequent phone calls, Zappley explained that he wanted to withdraw his employee contributions to the Plan based on the August 21, 1990, letter from Stride Rite and that he disputed the calculation of interest on his employee contributions. However, Zappley did not dispute the calculation of his pension benefit of $1,442.72 per year at his normal retirement date. (*Id.* ¶ 10.)

Having been notified of Zappley's divorce judgment, the Plan placed an administrative hold on Zappley's pension benefits, which serves to protect the spouse's interest in the benefits by withholding payment to the participant, until valid Qualified Domestic Relations Order ("QDRO") is received by the Plan.[1] (*Id.* ¶ 11.) Thereafter, the Plan Administrator sent Zappley information on the Plan's requirements for a QDRO and contacted Zappley's former divorce attorney to see if he could assist Zappley in preparing a QDRO. Rather than preparing a proposed QDRO, however, Zappley filed a motion to amend his final judgment of divorce and requested the New Jersey court to award him 100% of his pension benefits. (*Id.* ¶¶ 13-15.)

---

[1] A QDRO is a "domestic relations order . . . which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan" and which meets certain statutory requirements. 29 U.S.C. § 1056(c)93)(B)(i). An "alternate payee" is "any spouse, former spouse, child, or other dependant of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

On June 11, 2009, the Plan prepared calculations of interest on Zappley's employee contributions as well as his monthly pension benefit for normal retirement age. Although the Plan also prepared a calculation for an early retirement benefit, the Plan asserts that an early retirement calculation was prepared in error because Zappley is not eligible for an early retirement benefit.[2] (*Id.* ¶ 16.) On June 24, 2009, the Plan Administrator's legal counsel sent a letter to Zappley advising him how to proceed if the state court permitted modification of the divorce judgment to allow Zappley sole rights to his pension benefit and providing a preliminary estimate of his benefits under the Plan, subject to the receipt of a QDRO. On July 6, 2009, Zappley sent Collective Brands' legal department a copy of a proposed order to modify the divorce judgment containing a handwritten note indicating that Zappley disputed the calculation of his pension benefit. Subsequently, on August 12, 2009, in response to Zappley's inquiry about the status of his QDRO, the Plan provided Zappley a revised estimate of his pension benefit, which assumed that he would be successful in having the divorce judgment modified and a QDRO waived. (*Id.* ¶ 20.) Finally, on September 8, 2009, the Plan Administrator's counsel sent Zappley a letter confirming that Zappley was taking steps to obtain a QDRO to divide Zappley's pension benefits with his ex-wife. In addition, counsel enclosed a copy of the Plan's QDRO procedures as well as a copy of the retirement benefit estimates previously furnished to Zappley. (*Id.* ¶ 21.)

To date, Zappley has not furnished a valid QDRO that is required to release the administrative hold on Zappley's pension benefits. (*Id.* ¶ 24.)

---

[2] As the Court understands it, Zappley contends that he is entitled to an early retirement benefit based on a July 22, 2008, letter from Audree Jacobs, a Senior Compensation Analyst for Stride Rite.

## DISCUSSION

As noted above, Zappley alleges a claim for benefits under the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Exhaustion of administrative remedies is a well-established concept under ERISA jurisprudence. Although ERISA does not specifically contain an exhaustion requirement, the Sixth Circuit has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979 (6th Cir. 1991) (citing 29 U.S.C. § 1133(2)). Exhaustion is "routinely enforce[d]" where the plaintiff claims that his benefits were improperly calculated under the terms of a plan. *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 439 (6th Cir. 2009). "ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator in the first instance." *Id.* Moreover, the Sixth Circuit has written that exhaustion of administrative remedies serves:

> (1) To help reduce the number of frivolous law-suits under ERISA.
> (2) To promote the consistent treatment of claims for benefits.
> (3) To provide a nonadversarial method of claims settlement.
> (4) To minimize the costs of claims settlement for all concerned.
> (5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.
> (6) To enhance the ability of trustees of benefit plans to correct their errors.
> (7) To enhance the ability of trustees of benefit plans to interpret plan provisions.
> (8) To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Constantino v. TRW, Inc.* 13 F.3d 969, 975 (6th Cir. 1994).

Exhaustion is excused "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 n.4 (6th

Cir. 1998). "The standard for adjudging futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.*

Section 21.10 of the Plan document provides, in relevant part, as follows:

> 21.10 <u>Claims Procedure</u>. The Committee shall make all determinations as to the right of any person to a benefit under the Plan.
> (a)  In accordance with Section 503 of the ERISA and the regulations of the Secretary of Labor prescribed thereunder,
> (i)  All claims for benefits and for determination of the qualified status of a domestic relations order under this Plan shall be filed with the Committee in accordance with such procedures as the Committee shall reasonably establish;
> (ii)  The Committee shall, within sixty (60) days of submission of a claim, provide adequate notice, in writing or by such other method as the Committee may reasonably establish, to any claimant whose claim for benefits under the Plan has been denied, setting forth the specific reason for the denial and such other information as is required by said regulations in a manner calculated to be understood by the claimant;
> (iii)  The Committee shall, upon proper request by a claimant within ninety (90) days of the receipt of the notice that the claim has been denied, afford a reasonable opportunity to such claimant for a full and fair review by the Committee of the decision denying the claim;
> (iv)  The Committee shall, within sixty (60) days (or up to one hundred-twenty (120) days, if circumstances warrant an extension of time) of receipt of a request for a review, render a decision on its review, in writing or by such other method as the Committee may reasonably establish, setting forth the specific reasons for such decision, written in a manner to be under by the claimant.

(Plan Document § 20.10(a)(1)-(4); *see also* Summary Plan Description at 20-22.)[3]

Although Zappley has filed a lengthy response to Stride Rite's motion, the Court is unable to ascertain any basis for concluding that Zappley properly exhausted his claim for benefits as required by the Plan. Moreover, nothing in Zappley's response suggests that resort to the Plan's administrative procedures would be futile. Although Zappley did inquire about his pension benefits

---

[3] The "Committee" is the "Retirement Plan Committee" appointed by the Plan Administrator to administer and interpret the Plan. (Summary Plan Description at 20.)

6

and received some written responses, it is not clear to the Court that Zappley fully exhausted his administrative remedies, including seeking a review from the Committee, which is responsible for reviewing and deciding claims for benefits. The Court thus agrees with Stride Rite that Zappley has not fully exhausted his administrative remedies.

The Court recognizes that in its discretion it may either dismiss the case without prejudice or stay the case pending exhaustion. *See Davis v. Ret. Plan of Phibro Animal Health Corp. & Subsidiaries & Affiliates*, No. 08-cv-779-JPG, 2009 WL 1376245, at *4 (S.D. Ill. May 14, 2009) (exercising discretion to stay rather than dismiss claim for benefits for lack of exhaustion). However, given Zappley's continuing failure to obtain a QDRO as requested by Stride Rite or to otherwise have the New Jersey court enter an appropriate order regarding the disposition of his pension benefits, the Court has serious reservations about whether Zappley will fully and diligently exhaust his administrative remedies. Accordingly, rather than hold the case open on the chance that Zappley will actually exhaust, the Court exercises its discretion to dismiss the case without prejudice.

## CONCLUSION

For the foregoing reasons, the Court will grant Stride Rite's motion for summary judgment and dismiss Zappley's complaint without prejudice.

An Order consistent with this Opinion will be entered.


Dated: July 9, 2010         /s/ Gordon J. Quist
                            GORDON J. QUIST
                            UNITED STATES DISTRICT JUDGE