UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONALD W. ZAPPLEY, SR.,

    Plaintiff,

v.                                           Case No. 2:09-CV-198

THE STRIDE RITE CORPORATION,        HON. GORDON J. QUIST

    Defendant.

## OPINION

### I. PROCEDURAL HISTORY

Pro se Plaintiff Donald W. Zappley, Sr. filed a complaint against his former employer, The Stride Rite Corporation, on September 15, 2009. The Court construed Zappley's complaint as alleging two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* : (1) a claim for discrimination under ERISA § 510, 29 U.S.C. § 1140, for wrongful discharge by Stride Rite in 1987 to prevent him from becoming vested in a disability pension under the Stride Rite Retirement Income Plan (Plan); and (2) a claim for benefits under the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

On January 12, 2010, the Court dismissed Zappley's claim under ERISA § 510 on the ground that it was barred by the statute of limitations. (Dkt. ## 12, 13.) On July 9, 2010, the Court granted Stride Rite summary judgment on Zappley's claim for benefits on the ground that Zappley failed to exhaust his administrative remedies as required by the Plan and ERISA. (Dkt. ## 39, 40.) Zappley appealed the dismissal to the United States Court of Appeals for the Sixth Circuit, which affirmed this Court's Order in an unpublished order issued on March 29, 2011. *Zappley v. Stride Rite Corporation*, No. 10-1941 (6th Cir. Mar. 29, 2011).

Following this Court's dismissal of his claim for benefits, Zappley pursued administrative review of his claim through all levels of review and submitted various documents in support of his claim. On April 5, 2011, the Collective Brands, Inc. Retirement and Investment Plan Committee (Plan Committee), which administers the Plan for Stride Rite, issued its final decision on Zappley's claim for benefits. (Dkt. # 60, Page ID 1536–48.) On May 4, 2012, the Court granted Zappley's motion to reinstate his complaint in this case to seek review of the Plan Committee's decision.

Pursuant to the ERISA Case Management Order entered on May 7, 2012, Stride Rite has filed the Administrative Record and has filed a Motion for Judgment on the Administrative Record. For the following reasons, the Court will grant Stride Rite's motion and affirm the Plan Committee's decision.

## II. BACKGROUND

### A. Zappley's History with Stride Rite

Zappley was born on March 22, 1954. Zappley was hired by Stride Rite on July 14, 1975, when he was twenty-one years old. Stride Rite terminated Zappley's employment on February 21, 1987. During his employment with Stride Rite, Zappley was a participant in the Plan and is entitled to Plan benefits. (Def.'s Br. Supp. Mot. at 1.) For a few years during his employment with Stride Rite, Zappley made contributions to the Plan. Under the Plan, Zappley's Normal Retirement Date (the month following the date on which the participant turns age 65) is April 1, 2019. In August of 1990, in response to Zappley's request, a Stride Rite benefits administrator sent Zappley forms that he needed to withdraw his contributions from the Plan. (Dkt. #61, Page ID 11589.) Stride Rite also sent Zappley a Termination of Employment form that Connecticut General Life Insurance Company (CIGNA) issued on August 26, 1990, which stated that Zappley contributed $405.54 to the Plan during his employment with Stride Rite. (Dkt. #61, Page ID 1590.) The Connecticut General form

also stated that interest of $221.09 had accrued on Zappley's contribution and that Zappley's yearly benefit at his Normal Retirement Date would be $1,422.72. (*Id.*)

In 2007, Zappley contacted the Director of Benefit Strategy and Design to inquire about his pension benefits and to notify the Director that he wished to withdraw his contributions as directed in the 1990 letter. In addition, Zappley informed the Director that he had been divorced in 1992. Accordingly, Stride Rite placed an administrative hold on Zappley's pension benefit pending receipt of a valid Qualified Domestic Relations Order (QDRO), as required in the divorce proceeding, to protect Zappley's ex-spouse's interest in the benefits.[1]

**B.     Plan Provisions**

Prior to 1984, Plan participants were required to make contributions to the Plan. (Dkt. #55, Page ID 1283.) After January 1, 1984, participants were no longer required or allowed to make contributions. (*Id.*)

As of January 1, 1976, participant contributions were calculated as follows:

> 13.1    Effective January 1, 1976 - Amount of Participant's Contributions
>
> During each calendar year in which a Participant receives Earnings *and has a payroll deduction order in effect*, the Employer shall deduct a Participant's Contributions in an amount equal to:
>
> 3% of that portion of his Earnings received from the Employer during each calendar year which is in excess of $7,000.
>
> No Participant's Contributions, however, shall be deducted during a period in which the Participant is not accruing Credited Service, or which is after his Annuity Commencement Date.

(1976 Plan § 13.1, Dkt. #58, Page ID 1423 (italics added).) Prior to 1984, the Plan contained the following eligibility requirements:

> 3.1     Eligibility for Participation

---

[1] The administrative hold remains in place, as Zappley has yet to provide a valid QDRO to Stride Rite. (Def.'s Br. Supp. Mot. at 1 n.1.)

3

> Each Employee who was covered under the Prior Plan on the day before January 1, 1976, and whose Service had not previously ceased, will continue to be a Participant under this Plan on and after January 1, 1976.
>
> Each other Employee will be eligible to become a Participant under this Plan on the Plan Conversion Date or the first day of the month thereafter, when he first meets all of the following requirements:
>
> (A) *he has attained his 25th birthday*.
>
> (B) he has one year of Service.
>
> (C) he was hired prior to age 60.
>
> These eligibility requirements apply to both commissioned salesmen and salaried employees.
>
> . . . .
>
> 3.2     Date of Participation
>
> Each Employee may elect to become a Participant under this Plan by *completing and delivering to the Employer a payroll deduction order*. An Employee will become a Participant as of the date he becomes eligible for participation if his election is made not more than 31 days thereafter; otherwise, as of the first day of the month following the date he makes the election, provided that he meets all of the eligibility conditions.

(1976 Plan §§ 3.1, 3.2 (italics added).) The Plan was amended in 1984 pursuant to the Retirement Equity Act of 1984 to reduce the minimum eligibility age from 25 to 21 years. (Dkt. #60, Page ID 1538.)

As pertinent to Zappley's benefit determination, Normal Retirement Benefits are calculated as follows:

> (a)     <u>For Credited Service prior to January 1, 1984</u>: An amount equal to the greater of (i) the Participant's Accrued Benefit under the Plan as of December 31, 1983 or (ii) 1% of the Participant's average Earnings for 1981, 1982, and 1983 up to $9000 times the number of years of Credited Service through 1983 plus 1.75% of Participant's average Earnings for 1981, 1982 and 1983 in excess of $9000 times number of years of Credited Service through 1983.
>
> (b)     <u>For Credited Service on or after January 1, 1984 but prior to January 1, 1989</u>: An amount equal to 1.25% of Participant's Earnings up to $15,000 for each

4

year of Credited Service plus 2% of Participant's Earnings in excess of $15,000 for each year of Credited Service.

(2002 Plan § 4.02, Dkt. #55, Page ID 1251.)

Finally, the Plan provides an early retirement benefit in certain circumstances:

> 5.01 <u>Eligibility and Commencement - Early Retirement Income</u>. Each Participant who retires from the employ of the Company within the ten (10) year period immediately prior to his/her Normal Retirement Date may elect to receive an early retirement income, provided he/she has completed (i) with respect to each Participant who does not have at least one (1) Hour of Service on or after June 1, 1989, fifteen (15) years of Service or (ii) with respect to each Participant who does have at least (1) Hour of Service on or after June 1, 1989, ten (10) years of Service. Payment of early retirement income shall commence on the first day of any month between the date the election is made and the Participant's Normal Retirement Date, as specified by the Participant in his/her election.

(*Id.*, Dkt. #55, Page ID 1254.)

**C.     Administrative Review**

On August 27, 2010, while Zappley's appeal to the Sixth Circuit was pending, the Plan Committee sent Zappley a letter stating that it interpreted Zappley's appeal as an effort to seek review of Stride Rite's Normal Retirement income benefit calculation for Zappley and advising Zappley of the procedure for seeking administrative review. (Dkt. #55, Page ID 1225.) The Plan Committee advised Zappley that it construed Zappley's appeal to raise two issues: (1) the calculation of Zappley's Normal Retirement benefit and; (2) Zappley's entitlement to an Early Retirement Income benefit under the Plan. To assist Zappley, the Plan Committee calculated Zappley's Normal Retirement benefit pursuant to § 4.02 of the Plan, using 1982 as the first year of credited service under the Plan (Zappley's first year of participation). Based on its calculations, the Plan Committee determined that—without considering the effect of a QDRO from Zappley's divorce proceeding—Zappley was entitled to a yearly benefit of $2,514.21, or a monthly benefit of $209.52. (*Id.* at Page ID 1226–29.) Regarding Early Retirement income, the Plan Committee advised Zappley that he was ineligible for that benefit because Zappley's employment with Stride Rite did

not terminate within ten years of Zappley's Normal Retirement Date (April 1, 2019) and, because Zappley's employment terminated on February 21, 1987, he did not have one Hour of Service with Stride Rite after June 1, 1989. Finally, the Plan Committee advised Zappley of the claims procedure that he should follow if he sought review of his claim.

Zappley submitted a written request for administrative review of the Plan Committee's determinations. In its November 17, 2010 response, the Plan Committee interpreted Zappley's appeal as asserting his: (1) entitlement to a Disability Benefit under the Plan based on his allegations of wrongful termination in 1987; (2) his dispute of the calculation of his Normal Retirement benefit; and (3) his eligibility for Early Retirement Income. (Dkt. #59, Page ID 1463.) With regard to Zappley's claim for a Disability Benefit based on his allegedly wrongful termination, the Plan Committee determined that this Court had already addressed that claim and held the claim barred by the statute of limitations. With regard to calculation of Zappley's Normal Retirement benefit, the Pension Committee construed Zappley's submission as arguing that he participated in the Plan from 1979 to 1981 and, therefore, is entitled to a benefit for that period. Zappley also asserted that his annual benefit calculation should be divided by eight years, rather than twelve months as the Plan Committee had done. As for participation prior to 1982, the Plan Committee noted that simply having earnings in excess of $7,000 was not sufficient for automatic participation, because Section 13.1 of the Plan also requires a voluntary payroll deduction order to be in effect to authorize the voluntary contribution to the Plan. The Plan Committee determined that without such an order in effect, Stride Rite would not have reduced Zappley's earning by three percent from 1979 to 1981 for his voluntary contribution to the Plan. (*Id.* at Page ID 1464–65.) However, the Plan Committee invited Zappley to submit any documentation he had, including W-2 forms, payroll or check stubs, or other information, to support his claim that he participated in the Plan prior to 1982. As for calculation of the monthly benefit, the Plan Committee concluded that the annual benefit should be

6

divided by 12 rather than 8 because "the generally accepted civil calendar has 12 months in 1 year." (*Id.* at Page ID 1465.) Finally, because Zappley did not provide any reason to contest the Plan Committee's prior decision on Early Retirement benefits, the Plan Committee reiterated its prior reasons for concluding that Zappley is not entitled to such benefits.

Zappley appealed the Plan Committee's Notice of Adverse Determination, and the Plan Committee interpreted Zappley's appeal as raising the same three issues as his prior appeal. Thus, the Plan Committee rejected Zappley's claims for Disability Benefits based on his allegedly wrongful termination and Early Retirement benefits for the same reasons it gave in rejecting Zappley's previous appeal. (Dkt. # 60, Page ID1536–37, 1547.) Regarding the calculation of his Normal Retirement benefit, Zappley asserted that his Plan participation date was earlier than 1982 and that his annual benefit should be divided by eight years instead of 12 months to obtain his monthly benefit. Zappley did not submit documents such as W-2 forms or payroll or check stubs supporting his claim that Stride Rite deducted 3% from his earnings prior to 1982. However, he cited three bases to concluded that he participated in the Plan before 1982.

First, Zappley argued that a change to the years of service and age requirements for participation in the Plan supported that he participated in the Plan before 1982. The Plan Committee noted that while the Plan was amended in response to the Retirement Equity Act of 1984 to lower the minimum participation age from 25 to 21, Zappley still would not have been eligible to participate in the Plan in 1977 or 1978 because Zappley did not meet the age of 25 eligibility requirement and, in any event, Zappley did not have a payroll deduction order in effect. (*Id.* at Page ID 1538–40.) In addition, the Plan Committee found that the one-page correction to the 1976 Summary Plan Description that Zappley submitted did not change the result.

Second, Zappley asserted, without submitting supporting evidence, that he had been enrolled in the Plan and either the company stopped his contributions or Zappley voluntarily stopped them no later than 1979-1980. The Plan Committee found this assertion undermined by the first paragraph of a November 14, 1981 letter that Zappley submitted in support of his appeal, stating:

> Dear Don:
>
> The Stride Rite retirement Income Plan has been revised as of January 1, 1981. Though you may have been contacted before about the Plan and decided against joining, we wish to inform you of this revised Plan and extend to you the opportunity to enroll for 1982.

(*Id.* at Page ID 1541 (quoting Exhibit B to Zappley appeal).) The Plan Committee reasoned that the letter suggests that prior to 1982, Zappley had been offered but had declined participation in the Plan, and was consistent with a 1986 benefits statement indicting that Zappley first participated in the Plan in 1982.

Third, Zappley argued that a discrepancy between a 1986 benefit statement showing that he made contributions in the amount of $456 and the 1990 CIGNA form showing that he made contributions of 405.54 supported his claim for earlier participation. The Plan Committee noted that Zappley appeared to argue that he must have contributed prior to 1982 because it would be impossible to have a greater contribution amount in 1986 than in 1990, thus suggesting that Zappley must have made contributions prior to 1982. The Plan Committee rejected Zappley's argument because the figure from the 1986 benefit statement included interest, whereas the contribution amount on the 1990 CIGNA statement did not. (*Id.* at Page ID 1541–42.)

As for Zappley's claim that his annual benefit amount should be divided by 8 years rather than 12 months, the Plan Committee cited Plan provisions relating to calculation of the annual benefit and concluded that it was reasonable to divide the annual amount by 12 months to obtain the

8

monthly benefit. The Plan Committee therefore affirmed its prior determination that Zappley is entitled to a monthly benefit of $202.43, without considering the effect of a QDRO.[2]

## III. DISCUSSION

### A. Standard of Review

A court's first task in reviewing a claim for benefits under ERISA is to identify the proper standard by which to review the plan administrator's decision. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Such review is conducted "without deference" to the plan administrator's decision. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116, 128 S. Ct. 2343, 2350 (2008).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos.*

---

[2] The Plan Committee determined that its prior calculation of Zappley's monthly benefit as $209.52 was erroneous because the calculation did not reflect a 1981 Plan revision, which results in a benefit of $202.43 when applied to the benefit calculation. However, the Plan Committee stated that it would ask Stride Rite to make up the $7.09 difference outside of the Plan, giving Zappley the same benefit the Plan Committee had calculated in its November 17, 2010 letter.

*Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). In applying this standard, a court must defer to the administrator's interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith. *Davis*, 887 F.2d at 695. While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)). A court may not, however, "merely . . . rubber stamp the administrator's decision," but must actually "exercise [its] review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

> Section 14.06 of the Plan provides, in pertinent part:
>
> The Committee shall have such discretionary power as may be necessary to discharge its duties hereunder, including, but not limited to, the discretionary power to interpret, apply and administer the Plan, to construe all terms of the Plan and Plan-related documents and to determine all questions of eligibility, length of Service, dates of birth, membership and retirement, computation of benefits, value of benefits and related matters under the Plan, including determination of any and all factual issue arising in connection with those determinations. . . .

(Plan § 14.06, Dkt. # 56, Page ID 1289.) This language is a sufficiently broad and clear grant of discretion, both with regard to interpretation of Plan documents and eligibility determinations, to limit this Court's review to the deferential arbitrary and capricious standard.

**B.     Analysis**

Based on its review of the Plan Committee's determinations and the pertinent portions of the Administrative Record, the Court finds no reason to conclude that any of the Plan Committee's decisions were arbitrary and capricious.

From what the Court can glean from Zappley's response to Stride Rite's motion, it appears that Zappley again argues that he is entitled to Disability Benefits under the Plan based on an allegedly wrongful termination. To the extent Zappley does, in fact, seek such benefits, the Court has already held, and the Sixth Circuit has affirmed, that such claim is barred by the statute of limitations.

Zappley also appears to seek review of the Plan Committee's determination of Zappley's Normal Retirement benefit. In concluding that Zappley is entitled to benefits beginning in 1982 and not earlier, the Plan Committee cited various documents, including benefit statements, showing that Zappley first participated in the Plan in 1982. The Plan Committee gave rational reasons for rejecting Zappley's arguments and evidence, which in some cases actually were consistent with the Plan Committee's determinations. Moreover, the Plan Committee reasonably interpreted the pertinent Plan provisions to require that Zappley have executed a payroll deduction order. Given the absence of evidence in the administrative record that Zappley actually executed such an order, the Plan Committee's decision was not arbitrary and capricious. Moreover, the Plan Committee's decision to divide Zappley's annual benefit by twelve months is a common-sense method of determining Zappley's monthly benefit.

Finally, to the extent Zappley takes issue with the Plan Committee's decision that Zappley is not entitled to an Early Retirement benefit, his argument lacks merit. The Plan Committee interpreted Plan Section 5.01 in a straightforward manner and concluded that, in light of the facts

presented, Zappley does not qualify for such benefits because his employment terminated more than ten years prior to his Normal Retirement Date and Zappley did not have one hour of service with Stride Rite on or after June 1, 1989. Accordingly, the Plan Committee's decision was not arbitrary and capricious in any respect.

### IV. Conclusion

For the foregoing reasons, the Court will grant Stride Rite's Motion for Judgment on the Administrative Record.

An Order consistent with this Opinion will be entered.


Dated: May 9, 2013                                                 /s/ Gordon J. Quist
                                                                            GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE